**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:                                                                        Chapter 11

3175-77 VILLA AVENUE HOUSING                           Case No. 19-12359-jlg
DEVELOPMENT FUND CORPORATION



                                                    Debtor
------------------------------------------------------------X

## DISCLOSURE STATEMENT DATED OCTOBER 2, 2019

      This is the Disclosure Statement (the "Disclosure Statement") in the chapter 11 case of 3175-77 Villa Avenue Housing Development Fund Corporation, (the "Debtor" and/or "DIP") This Disclosure Statement contains information about the Debtor and describes the Proposed Plan of Reorganization (the "Plan") filed by the Debtor on October 2, 2019  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit "A"**. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

      The proposed distributions under the Plan are discussed at pages 10-17 of this Disclosure Statement. General unsecured creditors are classified in Class 3 and will receive a distribution of 100 percent on the dollar on their allowed claims in cash within ninety (90) days beginning after the entry of the order confirming the Plan (the "Effective Date").

      A. **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the Plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in the event of a liquidation; and
- The effect of confirmation of the Plan.

      Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

1

B. **DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1. Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, NY.

*2. Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the completed ballot in the enclosed envelope to The Law Office of Charles A. Higgs Counsel for the Debtor, 450 Lexington Avenue, 4th FL, New York, New York 10017- Attn: Charles A. Higgs, Esq. See section IV A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

*3. Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon The Law Office of Charles A. Higgs, Counsel for the Debtor, 450 Lexington Avenue, 4th FL, New York, New York 10017- Attn: Charles A. Higgs, Esq. by _____.

*4. Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact: The Law Office of Charles A. Higgs Counsel for the Debtor, 450 Lexington Avenue, 4th FL, New York, New York 10017 - Attn: Charles A. Higgs, Esq.

C. **DISCLAIMER**

*The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and any approval of this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

2

II. **BACKGROUND**

A. **DESCRIPTION OF THE DEBTOR AND EVENTS LEADING TO BANKRUPTCY**

The Debtor owns real property known as 3175-3177 Villa Avenue Bronx, NY (the "Villa Avenue Property"). The Villa Avenue Property is a residential cooperative building consisting of fifty-six (56) apartments and four (4) commercial storefronts. The total gross rental income collected on a monthly basis is approximately _____.

The Debtor is party to a tax foreclosure action in state court with unpaid property taxes in the alleged amount of approximately two million dollars ($2,000,000). The Debtor obtained financing pre-petition in an amount sufficient to pay the tax arrears in full but discussions with the city broke down, as a result Debtor commenced this Chapter 11 bankruptcy.

**SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE**

On July 23, 2019, (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Southern District of New York, and Debtor has continued in possession of his property and management of his affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Last Day to File Proofs of Claims (the "Bar Date") will be set by the Court. The Debtor will be filing retention applications shortly seeking retention of certain professionals to the Debtor including: (1) Bankruptcy Counsel; (2) A Financial Advisor; (3) Accountants; (4) Real Estate Advisor; and (5) State Court Counsel.

Since the filing of this Bankruptcy Petition, the Debtor along with counsel have been engaged in on-going discussions with various parties regarding various sale and financing options, each of which will provide for payment of all claims in full no later than ninety (90) days from the Effective Date of the Plan.

B. **THE PROPERTY**

The Debtor owns real property known as 3175-3177 Villa Avenue Bronx, NY (the "Villa Avenue Property"). The Villa Avenue Property is a residential cooperative building consisting of fifty-six (56) apartments and four (4) commercial storefronts.

C. **PROJECTED RECOVERY OF AVOIDABLE TRANSFERS**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions, as it does not believe any causes of action exist.

D. **CLAIMS OBJECTIONS**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

III. **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS**

A. WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION?

As required by the Code, the Plan places all claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. UNCLASSIFIED CLAIMS

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with what is required by the Code. The Plan Proponent has *not* placed the following claims in any class:

*1. Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| **TYPE** | **ESTIMATED AMOUNT OWED** | **PROPOSED TREATMENT** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | TBD | Paid in full on the effective date of the Plan, or according to terms of obligation if late. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | N/A | Not Applicable but will be Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees | TBD | Paid in full in cash as approved by the Court but no later than the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement. |
| Office of the U.S. Trustee Fees | $325.00 | Paid in full on the effective date of the Plan. |
| **TOTAL** | TBD | |

*2. Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it will be paid in full, in cash, within thirty (30) days after the effective date. The Debtors do not have any priority tax claims under §§ 507(a)(8) of the Code.

C. **CLASSES OF CLAIMS**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | unimpaired | Deemed to Accept |
| 2 | General Unsecured Claims | unimpaired | Deemed to Accept |
| 3 | Priority Unsecured Claims | unimpaired | Deemed to Accept |

*1. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| Class 1 | Secure Claims for unpaid NYC Tax and Water bills | No | unimpaired | **Class:** Class 1 consists of the secured claims of New York City related to unpaid property taxes and water bills.<br><br>Class 1 claims will be paid in full. Debtor is reserving its right to challenge the amount of the claims and intends to seek tax reductions for amounts that were incorrectly calculated |

5

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 2 | Description: General Unsecured Claims | No | unimpaired | **Class:** Class 2 consists of general unsecured claims and will be paid in full.<br>**Treatment:** On or before the Effective Date the Debtor shall make one lump sum payment in cash, in full and final satisfaction of the unsecured priority claims<br>**Voting:** Class 2 is Unimpaired, and the Holder of the Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, the Holder of the Class 2 Claim is not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan. |

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Priority Unsecured Claims consisting of Tax Claims and Water Bills | Unimpaired | **Class 3:** Class 3 priority unsecured claims consist of pre-petition taxes and water bills.<br>**Treatment:** Upon the Effective Date Class 3 claims will be paid in full.<br>**Voting:** Class 3 is Unimpaired, and the Holder of the Class 3 Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan; provided, however, that all Class 3 Claims shall be subject to becoming Allowed Claims. |

D. **MEANS OF IMPLEMENTING THE PLAN**

1. *Source of Payments*

The Plan shall be funded through a bridge loan to be obtained by the Debtor post-petition subject to Bankruptcy Court Approval. The Bridge Loan will be for an amount sufficient to pay the tax lien, the water lien, and all other claims in full. It is anticipated that the amount of the Bridge Loan will be approximately $2 million to $2.5 million. The Debtor will then pay the bridge loan in full within ninety (90) days of the Effective Date of the Plan, through the sale of a number of units at the Villa Avenue Property, with the assistance of Hilco Real Estate LLC ("HILCO"). Debtor with the assistance of HILCO will set up an online auction of the co-op apartments located at the Villa Avenue Property to generate the most interest and maximize the sales prices of the units in a timely manner with the total sales process estimated to be completed in approximately ninety (90) days. In order to assist with the process, the Debtor, with the assistance of HILCO will

6

seek to arrange for a group of interested lenders to be available to meet with, and assist, potential purchasers in obtaining approved financing to purchase the units. The lenders that participate will do so with the understanding and goal of providing financing options low income borrowers.

In the alternative, the Debtor may propose a sale of either the entire Villa Avenue Property or of the four (4) storefront units to a single buyer. Under each of the scenarios above, it is anticipated that all claims will be paid in full.

Any unclaimed Distributions (including Distributions made by checks which fail to be negotiated) shall be retained in trust for the beneficial holders of Allowed Claims entitled thereto for a period of one-hundred eighty (180) days after the applicable Distribution Date. Any Distribution remaining unclaimed one-hundred eighty (180) days after the applicable Distribution Date shall be canceled (by a stop payment order or otherwise), the Claim relating to such Distribution shall be deemed disallowed and expunged, and the holder of such Claim shall be removed from the Claims list and shall receive no further Distributions under the Plan. Any and all cancelled Distributions shall be deemed available Cash and shall be distributed to the holders of Allowed Claims in accordance with the Plan until such Claims are paid in full, and then to the Debtor.

### E. RISK FACTORS

The proposed Plan poses minimal risks of default as the Plan is contingent upon the Debtor either obtaining post-petition financing or an approved buyer. In the event of sale of the entire building or upon approved financing, payment of claims may be made sooner than anticipated.

Creditors will receive more under the Debtor's Chapter 11 Plan than they would otherwise receive in a chapter 7 liquidation or dismissal of this case. If the Debtor's case was to be converted to a chapter 7 case and liquidated, it is anticipated that the recovery of the Creditor's would be as follows:

Outside of Chapter 11 bankruptcy the Secure Tax and Water Claims would likely receive an amount less than $500,000 through the third-party transfer program and the remaining claims would receive no payment on their claims.

### F. BEST INTEREST OF CREDITORS

Confirmation requires, among other things, that each class of impaired claims either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value the holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test."

G. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Plan, in Section 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

The executory contracts and unexpired leases that the Debtors will assume under the Plan are as follows: **The current apartment leases and storefront lease agreements will be assumed.**

All executory contracts and unexpired leases that are not listed in Section 6.01 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.
***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is thirty (30) days from the Effective Date.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

H. **Tax Consequences of Plan**

*Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And / Or Advisors.*

Confirmation may have federal income tax consequences for the Debtor and Creditors. The Debtor has not obtained, and does not intend to request, a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters that may arise as a result of confirmation. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.

Accordingly, each holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash and/or stock under this Plan.

*1. Tax Consequences to the Debtor*

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy

8

proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes' by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

### *2. Tax Consequences to Unsecured Creditors*

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands. A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

## IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: The Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.  **WHO MAY VOTE OR OBJECT**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

As the Debtor anticipates paying all claims in full, there are no impaired claims entitled to vote.

#### 1.  *What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a

9

proof of claim, unless the proof of claim is disallowed by the Court. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is December 3, 2018***

### 2. *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is Not Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), and (a)(8);
- holders of claims in classes that do not receive or retain any value under the Plan; and administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

### B. **VOTES NECESSARY TO CONFIRM THE PLAN**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cramdown" plan. The Code allows the Plan to bind non-accepting classes of claims if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, there us at least one impaired class voting in favor of the Plan, the Plan does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim as the variations on this general rule are numerous and complex.***

### C. FEASIBILITY

The Debtor is in the process of obtaining a bridge loan in an amount sufficient to pay all claims in full. The bridge loan will then be paid in full within ninety (90) days of the Effective Date of the Plan through the sale of a portion or all of the Debtor's interest in the Villa Avenue Property. The first payment under the Plan will be made to Allowed Claims and expenses of the Estate prior to the Effective Date, including U.S. Trustee's Fees in the estimated amount of $_____ and the Class 3 Claim in an amount to be determined after the bar date passes. The Debtors will make quarterly payments thereafter, in an amount that is no less than the minimum amount provided for in the Plan.

### Ability to Fund Plan

The Debtor believes that it will have sufficient funding in place upon the effective date to fund the Plan. The Debtor is currently in the process of obtaining a bridge loan in an amount sufficient to pay the claims in full. The Debtor has substantial equity in the Villa Avenue Property and has had on-going discussions with brokers, lenders, and purchasers and anticipates seeking court approval in the coming weeks of the financing and sales described in this disclosure statement and plan.

### D. BEST INTEREST OF CREDITORS TEST

Confirmation requires, among other things, that each holder of a Claim in an Impaired Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value the holder would receive or retain if the Debtors

11

were liquidated under Chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test." See section 1129(a)(15) of the Bankruptcy Code.

### E. CHAPTER 7 LIQUIDATION ANALYSIS

To determine the value that the holders of Impaired Claims would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of assets and properties of the Debtors in the context of a chapter 7 liquidation case. Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest. In the case of the Debtor, a chapter 7 trustee would be administrating an estate made up largely of the same Trust Assets that are available for Creditors under the Plan.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of non-exempt assets of the Debtor, augmented by Cash, if any, held by the Debtors at the time of the commencement of the chapter 7 case. That Cash amount would then be reduced by the amount of any Claims secured by the assets, the costs and expenses of the liquidation, and additional Administrative Claims and other Priority Claims that may result from the use of chapter 7 for the purposes of liquidation. It is anticipated that the impaired creditors would receive substantially less amounts in liquidations, and it is almost certain that unsecured creditors would receive nothing in a liquidation.

The costs of liquidation under chapter 7 would include fees payable to the trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that the trustee may engage, plus any unpaid expenses incurred by the Debtor during the Chapter 11 Case that would be allowed in the chapter 7 cases, such as compensation for attorneys, accountants or other professionals and costs and expenses of the Debtor. These Administrative Claims would have to be paid in Cash, in full, from the liquidation proceeds before the balance of those proceeds could be made available to pay other Priority Claims and allowed General Unsecured Claims from the Chapter 11 Case.

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim would receive in a chapter 7 liquidation.

### F. CONFIRMATION OF PLAN WITHOUT NECESSARY ACCEPTANCES

The Plan may be confirmed, even if it is not accepted by all of the Impaired Classes of Creditors, if the Bankruptcy Court finds that the Plan meets the requirements of section 1129(a) of the Bankruptcy Code and does not discriminate unfairly and is fair and equitable with respect to the Classes that are impaired and have not accepted the Plan. The provision for this type of confirmation is set forth in section 1129(b) of the Bankruptcy Code and is commonly referred to as "cramdown."

#### 1. **No Unfair Discrimination**

A plan of reorganization "does not discriminate unfairly" if (a) the legal rights of the non-

12

accepting Impaired Class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its allowed claim.

The Debtor believes that under the Plan (i) all Impaired Classes of Claims are treated in a manner that is consistent with the treatment of other Classes of Claims with which their legal rights are intertwined, if any, and (ii) no Class of Claims will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims in such Class. Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any Impaired Class.

### 2. **Fair and Equitable Test**

A plan is "fair and equitable" with respect to unsecured creditors if either: (i) each holder of an unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim; or (ii) the holders of claims that are junior to the claims of the non- accepting class do not receive any property under the plan on account of such claims and interests.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Financial Disclosures.*

## V. EFFECT OF CONFIRMATION OF PLAN

### A. MODIFICATION OF PLAN

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### B. POST-CONFIRMATION REPORTS

Pursuant to § 1106(a)(7) of the Bankruptcy Code, the Debtors shall be responsible for filing post-confirmation reports detailing the actions taken and the progress made toward the consummation of the Plan, which reports shall be filed on the 15th day of each October, January, April and July thereafter until the Debtors' case is closed, converted, or dismissed, whichever happens earlier.

                Respectfully submitted,

By:   */S/ Charles A. Higgs*
      Charles A. Higgs, Esq.
      Law Office of Charles A. Higgs
      Attorney for the Debtor
      450 Lexington Avenue, FL 4
      NY, NY 10017
      (917) 673-3768
      Charles@FreshStartEsq.com


3175-77 Villa Avenue Housing Development Corporation

/s/ Albert De La Cruz